**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**VANN TUCKER**                                                                                    **PETITIONER**
**ADC #121165**

**VS.**                              **CASE NO.: 5:12CV00108 BD**

**RAY HOBBS, Director,**
**Arkansas Department of Correction**                                          **RESPONDENT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

      Petitioner Vann Tucker, an inmate in the Arkansas Department of Correction

("ADC"), brings this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry

#2), challenging his conviction in the Circuit Court of Pope County, Arkansas.

Respondent Ray Hobbs has responded to the petition.  (#5)  For the following reasons,

Mr. Tucker's petition must be DENIED and DISMISSED.

**I.**      <u>**Background**</u>

      On March 17, 2010, a jury found Mr. Tucker guilty of aggravated residential

burglary and aggravated robbery.  (#5-1)  Mr. Tucker was on parole at the time of

conviction.  The jury sentenced him to two life sentences as a habitual offender.

      Mr. Tucker appealed his conviction, arguing that the trial court had improperly

denied his motions for mistrial and a change of venue, and that the evidence was

insufficient to support his conviction.  (#5-2)  On April 7, 2011, the Supreme Court of

Arkansas affirmed the conviction. *Tucker v. State*, 2011 Ark. 144.[1] Mr. Tucker did not file any applications or motions for post-conviction relief with the trial court.

He filed the current petition on March 23, 2012. (#2) In response to the petition, Director Hobbs contends that Mr. Tucker's claims are procedurally defaulted and lack merit. (#5)

## II.   Discussion

Mr. Tucker's claims lean heavily on Arkansas law and procedure. Federal habeas courts, however, are not arbitrators of state law or state procedure. *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997). This Court can consider Mr. Tucker's federal habeas petition only on grounds that he is being held in violation of the United States Constitution or in violation of federal law. 28 U.S.C. § 2254(a). To the extent Mr. Tucker alleges violations of Arkansas law or procedure, those claims are denied.

His mistrial and change-of-venue claims appear defaulted, because he failed to raise a federal issue regarding these claims with the State courts. However, this Court can reach the merits of Mr. Tucker's petition, even if he failed to properly exhaust the claims in the State courts. 28 U.S.C. § 2254(b)(2). Accordingly, a discussion of the merits is appropriate.

---

[1] The Arkansas Supreme Court discussed at length the factual background of the robbery and burglary. For the sake of brevity, this Court will not repeat the entire history.

A.    *Mistrial*

Mr. Tucker argues that the trial court erred by denying two separate motions for mistrial.  He did not provide, either in this petition or in his direct appeal, any United States Supreme Court case that would support habeas relief.  Mr. Tucker mentioned generally the right to a fair and impartial jury.  But this conclusory allusion is insufficient.

Mr. Tucker's mistrial claim involves two incidents.  The first occurred during voir dire, when a prospective juror stated that she remembered Mr. Tucker's "original case."[2] (#6, Ex. 3, p. 285)  When asked whether she could set aside any initial impression of the pending case, she said she would try, but that she was "afraid [she] would be a little prejudiced . . .".  (#6, Ex. 3, p. 286)  Outside the hearing of the jury pool, the prospective juror stated that she remembered the case because she lived close to where the murder had occurred.  (#6, Ex. 3, p. 286-87)  Defense counsel moved for a mistrial, arguing that the comment about the original case tainted the jury pool.  (#6, Ex. 3, p. 289)  The trial court declined to grant the motion.  This prospective juror was not seated on the jury.

Throughout the voir dire, and after the prospective juror's comment, the trial judge asked the prospective jurors whether they had any knowledge, from any source, about Mr. Tucker.  (#6, Ex. 3, p. 282-408)  Of at least sixty prospective jurors, only the one prospective juror answered affirmatively.

---

[2] Mr. Tucker alleges that the prospective juror's "original case" comment was a reference to his October 2001 conviction for murdering Fred Kain in December of 2000.

3

There is no evidence that the comment tainted the jury pool.  A preconceived notion of the guilt of an accused, without more, is insufficient to rebut the presumption of a prospective juror's impartiality.  *Dobbert v. Florida*, 432 U.S. 282, 302, 97 S. Ct. 2290, 2302-03 (1977).  All that is required is that the juror be able to lay aside any impression or opinion and render a verdict based on the evidence presented at trial.  *Id*. (citations omitted).

The second motion for mistrial came during the questioning by Mr. Tucker's counsel of an accomplice, Tacara Wolfe.  The state prosecutor had asked Ms. Wolfe about a statement she had made to law enforcement.  The prosecutor asked Ms. Wolfe why she had not mentioned knowing Mr. Tucker.  Ms. Wolfe had responded that she did not want to mention Mr. Tucker's name because she was afraid.  (#6, Ex. 3, p. 570)  The prosecutor then moved on to question Ms. Wolfe about her guilty plea.  During cross-examination, defense counsel was attempting to discredit Ms. Wolfe by noting that she did not include in her statement to police the time she dropped Mr. Tucker off.  The following colloquy ensued:

Counsel:    It's also important to tell in your statement that you dropped Vann Tucker off at 2 o'clock that afternoon, isn't it?

Ms. Wolfe:    Yes.

Counsel:    And, you didn't say that in your statement?

Ms. Wolfe:    I didn't mention his name at all because I was scared to mention his name.

4

| Counsel: | Why didn't you tell the statement that you dropped him off at 2? |
|---|---|
| Ms. Wolfe: | Because I didn't want to mention his name.  I had already – when I got arrested they told me he'd killed somebody – and he had held the sheriff hostage. |

(#6, Ex. 3, p. 598)  Counsel then moved for a mistrial, claiming that he had not elicited the testimony.  The trial judge denied the motion, but admonished the jury to disregard and not to consider for any purpose Ms. Wolfe's last response.  (#6, Ex. 3, p. 601)

Mr. Tucker argues that the comments by Ms. Wolfe prejudiced him and that the judge's admonishment was insufficient.  The Arkansas Supreme Court, like the trial court, found that Ms. Wolfe's comment was invited.  *Tucker v. State*, 2011 Ark. 144.  (#6, Ex. 3, p. 598-601)  This Court agrees.

Even if the response was not invited, juror exposure to information about prior convictions does not presumptively deprive a defendant of due process.  *Murphy v. Florida*, 421 U.S. 794, 799, 95 S. Ct. 2031, 2036 (1975).  The Federal Rules of Evidence allow the admission of evidence of prior crimes under some circumstances.  See *e.g.*, FED. R. EVID. 404(b).  It is overstatement to claim that any mention of a prior crime automatically mandates a new trial.

Here, Mr. Tucker essentially argues for a presumption in his favor.  Besides noting the comment, however, his only argument is, "[c]an it seriously [be] denied that Ms. Wolfe's proclamation to the jury that Petitioner is a murderer and kidnapper created a

reasonable probability of prejudice?" (#2, p. 6) The circumstances do not support a presumption here.

There was no shortage of evidence against Mr. Tucker. See Section II.C., *infra*. The trial judge properly admonished the jury. It is also unclear whether the jury interpreted the comment as referring to a prior crime, or an attempt by authorities to scare Ms. Wolfe into talking. After reviewing the transcript, and considering the evidence against Mr. Tucker, this Court cannot conclude that Ms. Wolfe's comment was unduly prejudicial or that this comment denied Mr. Tucker a fair trial.

B.    *Change of Venue*

Mr. Tucker also alleges the trial court denied his right to a fair trial by denying his request for a change of venue. (#2) This claim is closely related to the denial of his first mistrial request. For support, Mr. Tucker notes the publicity regarding his prior murder conviction.

The Supreme Court has overturned state convictions when the trial was "utterly corrupted by press coverage." *Dobbert*, 432 U.S. at 302 (citations omitted). There is no requirement, however, that otherwise qualified jurors be totally ignorant of the facts and issues involved. *Id*. Even pervasive, adverse pretrial publicity does not inevitably lead to an unfair trial. *Skilling v. United States*, 130 S. Ct. 2896, 2916 (2010) (citations omitted).

The bulk of publicity regarding Mr. Tucker's murder of Fred Kain occurred almost a full decade before his trial for aggravated burglary and robbery (#2, ¶28-31), although

there was also some limited publicity after Mr. Tucker's arrest for aggravated burglary and robbery. (#2, ¶34-35)  This time lapse cuts against Mr. Tucker's claim.  See *Skilling*, 130 S.Ct. at 2916 (noting that over four years had elapsed between Enron's bankruptcy and Skilling's trial).

As noted, only one of the sixty prospective jurors had any knowledge of Mr. Tucker's past crimes, and that prospective juror was not seated on the jury.  The other prospective jurors, and all of the seated jurors, affirmed repeatedly that they could decide the case based solely on the facts and evidence presented at trial.  (#6, Ex. 3, p. 282-408) The circumstances here are quite different from circumstances where the Supreme Court has found a violation of the right to an impartial jury.  See *e.g.*, *Irvin v. Dowd*, 366 U.S. 717, 727, 81 S. Ct. 1639, 1645 (1961) (almost 90% of the jury pool had an opinion of guilt ranging from mere suspicion to absolute certainty and, of the twelve seated jurors, eight thought the petitioner was guilty.).

In this case, primary reliance on the judgment of the trial judge makes especially good sense.  *Skilling*, 130 S. Ct. at 2917.  There is nothing in the record tending to show that the trial judge made a mistake in denying Mr. Tucker's request to change venue.

C.     *Sufficiency of Evidence*

Mr. Tucker's final argument challenges the sufficiency of the evidence.  (#2)  He claims, inaccurately, that the accomplice's testimony was uncorroborated.  Even if accurate, the corroboration requirement is a matter of state law.  *Loeblein v. Dormire*, 229

7

F.3d 724, 727 (8th Cir. 2000) (citations omitted).  A lack of corroboration does not implicate a constitutional right cognizable in a federal habeas petition.  *Id.*

Mr. Tucker calls into question the credibility of non-accomplice testimony.  As Mr. Tucker acknowledges, the fact-finder – in this case the jury – was responsible for assessing the credibility of witnesses.  *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997).

Mr. Tucker further claims, without any support, that a non-accomplice was rewarded for perjured testimony.  (#2, ¶95)  This Court cannot rely on the veracity of completely incredible, unsupported allegations to grant habeas corpus relief.

Mr. Tucker has also raised a general sufficiency-of-evidence claim, a claim he raised in state court.  To resolve this claim, the Court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).

The Arkansas Supreme Court recounted abundant evidence supporting Mr. Tucker's conviction.  *Tucker*, 2011 Ark. 144.  The transcript shows that two accomplices, Nicole Myers and Tacara Wolfe, testified about Mr. Tucker's role in the robbery and burglary.  (#6, Ex. 3, p. 482-528; 564-605)  Several disinterested witnesses corroborated various parts of the accomplice testimony.  (#6, Ex. 3, p. 448- 459; 466-481; 606-646)  A convicted felon testified that Mr. Tucker sold him the rifles that were stolen during the

burglary, but that Mr. Tucker refused to sell him a .22 caliber pistol that he had with him. (#6, Ex. 3, p. 529-563) Several law enforcement officers testified that, prior to his arrest, Mr. Tucker fled from officers, then wrecked his vehicle. Officers subsequently found the stolen .22 caliber pistol inside the wrecked vehicle. (#6, Ex. 3, p. 647-670) This evidence is clearly sufficient to support Mr. Tucker's conviction.

## III. Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr. Tucker has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Mr. Tucker has not provided a basis for issuing a certificate of appealability. Accordingly, a certificate of appealability is denied.

## IV. Conclusion

All of the claims Mr. Tucker has raised in his federal petition either lack merit, are not appropriate for federal habeas review, or were procedurally defaulted. Because there are no available, non-futile state judicial remedies available to Mr. Tucker, his petition for

a federal writ of habeas corpus is DENIED, and this case is DISMISSED, with prejudice.

DATED this 12th day of September, 2012.

_____
UNITED STATES MAGISTRATE JUDGE